# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEMINI INSURANCE COMPANY, | : | |
| | : | Civil Action No. 17-7393-BRM-TJB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| 33 EAST MAINTENANCE INC., FCI TRANSPORT, INC. and FCI LEASING, LLC, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| ESTATE OF BRIAN PANCOAST BY ADMINISTRATIX AD PROSEQUENDUM DANA PANCOAST, DANA PANCOAST, Individually, and FREEHOLD CARTAGE, INC., | : | |
| | : | |
| Nominal Defendants. | : | |
| | | |
| 33 EAST MAINTENANCE INC., FCI TRANSPORT, INC. and FCI LEASING, LLC, | : | |
| | : | |
| Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIS OF PENNSYLVANIA, INC. and WILLIS OF NEW JERSEY, INC., | : | |
| | : | |
| Third-Party Defendants. | : | |

| | :  |
| --- | --- |
| WILLIS OF PENNSYLVANIA, INC. and | : |
| WILLIS OF NEW JERSEY, INC., | : |
| | : |
| Fourth-Party Plaintiffs, | : |
| | : |
| v. | : |
| CRC INSURANCE SERVICES, INC. | : |
| | : |
| Fourth-Party Defendants. | : |
| | : |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are: (1) Fourth-Party Defendant CRC Insurance Services, Inc.'s ("CRC") Motion for Judgment on the Pleadings (ECF No. 60); (2) Third-Party Defendants/Fourth-Party Plaintiffs Willis of Pennsylvania, Inc. and Willis of New Jersey, Inc.'s (collectively, "Willis") Motion for Judgment on the Pleadings (ECF No. 61); (3) Nominal Defendants Estate of Brian Pancoast by Administratix Ad Prosequendum Dana Pancoast (the "Estate") and Dana Pancoast's Motion for Judgment on the Pleadings (ECF No. 62); and (4) Plaintiff Gemini Insurance Company's ("Gemini") Cross Motion for Summary Judgment (ECF No. 71).[1] All motions are opposed. Having reviewed the parties' submissions filed in connection with the motions and having held oral argument on January 15, 2019, pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below, and for good cause shown, Defendants' Motions for Judgment on the Pleadings are **GRANTED**. Gemini's Motion for Summary Judgment is **DENIED**.

**I.    BACKGROUND**

This dispute arises out of Gemini's denial of insurance coverage to FCI Transport, Inc., FCI Leasing LLC, and 33 East Maintenance, Inc. (the "Freehold Entities"), as "Named Insureds" under the Gemini Policy, for the wrongful death and survivorship claims asserted against them by the Estate and Dana Pancoast, the widow of decedent Brian Pancoast, in the Underlying Lawsuit

---

[1] CRC, Willis, the Estate, and Dana Pancoast will be collectively referred to as Defendants.

for Brian Pancoast's death in a workplace accident. The parties agree the facts are not in dispute and that the issue before the Court is a matter of law. The sole issue before this Court is whether the "Named Insured versus Named Insured" Exclusion in the Gemini Policy bars coverage when a deceased employee's estate and his widow assert claims against a Named Insured in an underlying lawsuit.

### A. The Gemini Policy

CRC is a wholesale insurance broker who was authorized to place insurance with Gemini, among other insurers. (ECF No. 21 ¶ 12.) Willis, an insurance broker, approached CRC to obtain quotes for an excess policy for the Freehold Entities for the period of 2013 to 2014. (*Id.* ¶ 13.) CRC eventually placed the Freehold Entities with the Gemini Policy (*Id.* ¶ 17), which issued a commercial umbrella policy for the policy period of October 1, 2013 to October 1, 2014. (Gemini's Statement of Facts (ECF No. 71-1 ¶ 16); CRC's Resp. (ECF No. 73 ¶ 16); Willis' Resp. (ECF No. 76 ¶ 16).) The Gemini Policy names FCI Transport, Inc., FCI Leasing LLC, and 33 East Maintenance, Inc. as Named Insureds. (ECF No. 71-1 ¶ 17; Gemini Policy (ECF No. 71-14); ECF No. 73 ¶ 17; ECF No. 77 ¶ 17.) Under "Exclusions," the Gemini Policy contained the following:

> This Insurance does not apply to:
>
> . . . .
>
> **bb. Named Insured versus Named Insured**
> Any liability, costs or expenses of any Named Insured or its "employees" arising out of, caused or contributed to by any "bodily injury" or "property damage" claimed by any other Named Insured or its "employees".

(ECF No. 77-14 at 15.) Employee is defined as including "leased worker[s]" but not "temporary worker[s]". (*Id.* at 31.)

### B. The Underlying Lawsuit

On May 29, 2014, Brian Pancoast, an employee of Freehold Cartage, Inc., died during the course of his employment while working on a specialty roll-off tank/container when the hatch of the roll-off tank/container closed on him. (ECF No. 44 ¶ 13.) As a result of the workplace accident, Dana Pancoast and the Estate filed a wrongful death and survivorship action against the Freehold Entities in the Superior Court of the State of New Jersey, Middlesex County. (ECF No. 44-1.) All claims against Freehold Cartage, Inc. were voluntarily dismissed. (ECF No. 76 ¶ 4.) Summary Judgement was also entered in favor of 33 East Maintenance, Inc. and FCI Leasing LLC. (*Id.* ¶ 8.) Therefore, the only remaining defendant in the Underlying Lawsuit was FCI Transport. (*Id.* ¶ 9.) Eventually, the Estate and Dana Pancoast entered into a settlement with FCI Transport, whereby FCI Transport assigned to the Estate and Dana Pancoast all of its rights against Gemini, Willis and CRC. (*Id.* ¶ 11; ECF No. 73 ¶ 11.) The Estate and Dana Pancoast entered into a consent judgment with FCI Transport in the amount of $3,750,000. (ECF No. 73 ¶ 12.) FCI Transport was insured under a primary commercial general liability policy, which tendered its limit of $1,000,000 to the Estate and Dana Pancoast. (*Id.* ¶¶ 13-14.) Therefore, the Estate and Dana Pancoast agreed that they would only seek to recover the remaining $2,750,000 from Gemini, Willis and/or CRC. (*Id.* ¶ 15.)

Gemini denied any obligations to defend or indemnify the Freehold Entities pursuant to the "Named Insured versus Named Insured" Exclusion. (ECF No. 76 ¶¶ 22-26.) On September 14, 2017, it confirmed its denial of coverage. (*Id.* ¶ 27.) On September 22, 2017, Willis, on behalf of the Freehold Entities, wrote a letter to Gemini challenging its denial of coverage pursuant to the "Named Insured versus Named Insured" Exclusion. (*Id.* ¶ 28.) Nevertheless, on September 26, 2017, Gemini continued its denial of coverage. (*Id.* ¶ 29.)

### C. Procedural History

In addition to confirming its denial of coverage on several occasions, on September 22, 2017, Gemini filed this action seeking a declaration that there is no coverage for the Underlying Lawsuit. (ECF No. 1.) The Freehold Entities, the Estate, and Dana Pancoast filed Third-Party Complaints against Willis, asserting negligent procurement of coverage. (ECF No. 8.) Willis filed a Fourth-Party Complaint against CRC alleging that if the Court were to determine that the "Named Insured versus Named Insured" Exclusion applied, then CRC was negligent for failing to advise Willis that the Exclusion would preclude coverage in the circumstances presented by the Underlying Lawsuit. (ECF No. 21.)

On June 6, 2018, Willis filed a Motion to Dismiss Count III, a New Jersey Consumer Fraud Act claim, of the Third-Party Complaint filed by the Estate and Dana Pancoast against them. (ECF Nos. 49-50.) On June 18, 2018, the Estate and Dana Pancoast consented to the dismissal with prejudice of the New Jersey Consumer Fraud Act claim of its Third-Party Complaint against Willis. (ECF No. 51.) On October 22, 2018, CRC filed a Motion for Judgment on the Pleadings against Gemini's Amended Complaint and Fourth-Party Complaint. (ECF No. 60.) On that same day and on October 25, 2018, respectively, Willis and the Estate and Dana Pancoast also filed motions for judgment on the pleadings relying on CRC's motion brief. (ECF Nos. 61-62.) In response to the motions, Gemini filed a Cross Motion for Summary Judgment. (ECF No. 71.)[2]

---

[2] If, on a Motion to Dismiss under Rule 12(b)(6) or 12(c), materials outside the pleadings are presented and not excluded by the Court, the motion may be treated as one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Angelastro v. Prudential-Bache Secs., Inc.*, 764 F.3d 939, 944 (3d Cir. 1985). Because the parties agree there are no factual disputes, Gemini filed a Motion for Summary Judgment which was opposed by all parties, and all parties had the opportunity to present evidence and fully brief the instant motions, this Court will analyze all motions under the summary judgment standard.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party,

the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. Rules of Insurance Policy Construction

The parties agree the Gemini Policy is to be construed under New Jersey law. (*See* ECF No. 60-1 at 7-8 and ECF No. 71-1 at 11-12.) Under New Jersey law, the interpretation of an insurance

7

contract is a question of law. *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 698 (N.J. Super. Ct. App. Div. 2004).

"[W]hen interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms." *Id. (citing Stone v. Royal Ins. Co.*, 511 A.2d 717, 718 (N.J. Super. Ct. App. Div. 1986); *Tooker v. Hartford Acc. & Indemn. Co.*, 319 A.2d 743, 745-746 (N.J. Super. Ct. App. Div. 1974)). Generally, "insurance policies are liberally construed to afford coverage that any fair interpretation will allow." *Am. Wrecking Corp. v. Burlington Ins. Co.*, 946 A.2d 1084, 1088 (N.J. Super. Ct. App. Div. 2008) (citing *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990) (citation omitted)). "Consistent with that principle, courts also endeavor to interpret insurance contracts to accord with the objectively reasonable expectations of the insured." *Sealed Air Corp. v. Royal Indem. Co.*, 961 A.2d 1195, 1203 (N.J. Super. Ct. App. Div. 2008) (citations omitted).

Nevertheless, "the words of an insurance policy should be given their ordinary meaning, and in the absence of ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi*, 582 A.2d at 1260 (citation omitted); *Simonetti*, 859 A.2d at 698 ("When the terms of the contract are clear and unambiguous, the court must enforce the contract as it is written; the court cannot make a better contract for parties than the one that they themselves agreed to.") (citations omitted). The Court's role is not to write for the insured "a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 562 A.2d 208, 214 (N.J. 1989) (citation omitted). However, "[w]hen the provisions of the text, read literally, would largely nullify the protections afforded by the policy, we restrict their meaning 'so as to enable fair fulfillment of the stated policy objective.'" *Auto Lenders Acceptance Corp. v.*

*Gentilini Ford, Inc.*, 854 A.2d 378, 397 (N.J. 2004) (citation omitted).

However, where a genuine ambiguity exists, it must be resolved against the insurer. *DiOrio v. N.J. Mfrs. Ins. Co.*, 398 A.2d 1274, 1280 (N.J. 1979). If the language of the policy supports two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage must be applied. *Corcoran v. Hartford Fire Ins. Co.*, 333 A.2d 293, 298 (N.J. Super. Ct. App. Div. 1975). Nevertheless, an insurance policy is not ambiguous simply because two conflicting interpretations have been offered by the parties. *Rosario ex rel. v. Haywood*, 799 A.2d 32, 37-38 (N.J. Super. Ct. App. Div. 2002) (citing *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J. Super. Ct. App. Div. 2000)). "[I]n establishing ambiguity, the insured must do more than suggest a possible alternative reading of the contract; it must also offer an 'objectively reasonable reading of the disputed passage.'" *Pittston Co. Ultramar Am. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir. 1997). A clear ambiguity exists when the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Accident Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001).

When exclusionary provisions are involved, it is well settled that the court should broadly read coverage provisions, and narrowly read exclusionary provisions. *Search EDP v. Am. Home Assur.*, 632 A.2d 286, 289 (N.J. Super. Ct. App. Div.), *certif. denied*, 640 A.2d 848 (N.J. 1994); *Aviation Charters, Inc. v. Avemco Ins. Co.*, 763 A.2d 312, 314 (N.J. Super. Ct. App. Div. 2000), *aff'd as modified*, 784 A.2d 712 (N.J. 2001). "However, exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997) (quoting *Doto v. Russo*, 1659 A.2d 1371, 1378 (N.J. 1995)). Therefore, "where the words of an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of

liability.'" *Aviation Charters, Inc.*, 763 A.2d at 314 (quoting *Longobardi*, 582 A.2d at 1260; *Cobra Prods., Inc. v. Fed. Ins. Co.*, 722 A.2d 545, 549 (N.J. Super. Ct. App. Div. 1998), *certif. denied*, 733 A.2d 494 (N.J. 1999)). The burden is on the insurer to demonstrate that the exclusion applies and bars coverage, and to show that the insured's interpretation of the exclusion is unreasonable. *Aetna Ins. Co. v. Weiss*, 416 A.2d 426, 429 (N.J. Super. Ct. App. Div. 1980).

Accordingly, the first step in examining an insurance policy is determining whether ambiguity exists. *Pittston Co. Ultramar Am.*, 124 F.3d at 520.

### B. Analysis

The sole issue before this Court is whether the "Named Insured versus Named Insured" Exclusion in the Gemini Policy bars coverage when a deceased employee's estate and his widow asserted claims against a Named Insured in an underlying lawsuit.

Gemini argues the "Named Insured versus Named Insured" Exclusion "unambiguously excludes coverage to a Named Insured on the Gemini Policy, if the Named Insured's liability arises out of, is caused by or contributed to by the bodily injury claimed by an employee of another Named Insured on the Gemini Policy." (ECF No. 71-1 at 13.) Gemini specifically maintains the Exclusion applies to the Estate and Dana Pancoast, even though they are not Named Insureds, because "there is nothing in the Exclusion that looks to who has brought a claim or . . . even what theory of liability is pled. Instead, it looks whose [sic] injuries the Named Insured is liable for." (*Id.* at 17.) As such, Gemini contends that because the bodily injury at issue was regarding Brian Pancoast, an employee of a Named Insured, Freehold Cartage, Inc., the Exclusion applies. (*Id.*)[3]

---

[3] Gemini commences its argument by discussing what "bodily injury," "arising out of," "caused by," and "contributed by" mean in the Named Insured verses Named Insured Exclusion. These definitions, however, are irrelevant to the Court's determination because even if the Court accepts all of Gemini's arguments regarding those terms, the "claimed by" language of the Exclusion is still at issue. In fact, Defendants' concede the definition of these terms are "irrelevant to the determination this Court must make" and do not oppose Gemini's definitions. (ECF No. 72 at 4.)

10

Defendants argue the plain language of the Exclusion undermines Gemini's position. (ECF No. 60-1 at 9.) They argue, instead, that the Exclusion unambiguously requires the Court to look at who is bringing the claim and is expressly limited to claims asserted directly by Named Insured or employee of a Named Insureds. (ECF No. 72 a 5 and ECF No. 75 at 3.)

In the alternative, Gemini argues that even if the Exclusion looks to who has brought the claim, the claims brought by the Estate and Dana Pancoast are the equivalent of a claim brought by Brian Pancoast "because, under New Jersey Law, the Estate stands in the shoes of the decedent." (ECF No. 71-1 at 17.) Further, "under New Jersey law, the claim and damages asserted by Dana Pancoast do not exist independent of the Estate's Wrongful Death claim for the bodily injuries and death of [Brian] Pancoast." (*Id.*) Specifically,

> Dana Pancoast asserts claims under two New Jersey Statutes – the Wrongful Death Act (N.J.S.A. 2A:31-1 *et seq.*) and the Survivorship Statute (N.J.S.A. 2A:15-3 *et seq.*) Claims brought under both statutes are derivative of the Estate's claim, and is dependent on and incidental to the personal injury claim asserted on behalf of [Brain] Pancoast. Therefore, all of the claims raised on the Underlying Pancoast Lawsuit are the functional equivalent of a claim brought directly by [Brian] Pancoast.

(*Id.* at 17-18.)

In response to Gemini's alternative argument, Defendants argue that even if the Estate stands in the shoes of the decedent it is irrelevant because the Exclusion requires a claim to be asserted by a Named Insured or its employee to be excluded. (ECF No. 72 at 10.) Defendants contend "[t]he Exclusion turns on *who* is asserting claims against a Named Insured or its employee, not whether the claims being asserted are 'derivative of,' 'incidental to,' or otherwise predicated on the liability of a Named Insured of its employee." (ECF No. 75 at 10.)

The Court recognizes the well-settled principles governing the interpretation of insurance policies that mandate a broad reading of coverage provisions, narrow reading of exclusionary

provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations. However, none of these principles warrant a finding that the "Named Insured versus Named Insured" Exclusion bars coverage if the Underlying Lawsuit is brought by someone other than a Named Insured or employee of a Named Insured, such as the Estate and Dana Pancoast.

The Gemini Policy states,

> This Insurance does not apply to:
>
> . . . .
>
> **bb. Named Insured versus Named Insured**
> Any liability, costs or expenses of any Named Insured or its "employees" arising out of, caused or contributed to by any "bodily injury" or "property damage" **claimed by** any other Named Insured or its "employees".

(ECF No. 77-14 at 15 (emphasis added).) Employee is defined as including "leased worker[s]" but not "temporary worker[s]". (*Id.* at 31.) This Exclusion is unambiguous and unequivocal, and undoubtably revolves around *who* is asserting the claim, not who it initially belonged to or what claim is being asserted. By its plain terms, the Exclusion is expressly limited to claims asserted by a Named Insured or its employees, not an estate or family member.

Gemini's strained and broad interpretation of the Exclusion is inconsistent with the well-settled principles governing the interpretation of insurance policies. Gemini attempts to make the Exclusion a "but-for" test, arguing the Exclusion bars coverage for "all claims that find their origin in or would not exist *but for* the injuries and death of [Brian] Pancoast" regardless of who is asserting the claims. (ECF No. 71-1 at 27 (emphasis added).) Gemini's interpretation broadens the Exclusion and completely ignores the second prong of the Exclusion, requiring that the liability in question be "claimed by" a Named Insured or its employee. When exclusionary provisions are involved, this Court must broadly read coverage provisions, and *narrowly* read exclusionary

provisions. *Search EDP*, 632 A.2d at 289. It is also well-settled that insurance policies must be "liberally construed to afford coverage that any fair interpretation will allow." *Am. Wrecking Corp.*, 946 A.2d at 1088.

Gemini also suggests the Exclusion applies to claims made *on behalf* of a Named Insured. However, the plain language of the Exclusion does not apply to claims made on behalf of a Named Insured, an estate, or a widow. Gemini could have written the policy to include such individuals, but it did not. If Gemini wanted the Exclusion to bar coverage for claims by a Named Insured's deceased employee's estate or spouse, it should have drafted it accordingly. Gemini could have, for example, drafted the Exclusion to exclude coverage for liability claimed by or on behalf of a Named Insured or its employees, or claims made by estates or decedent's widows. *See Levy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 889 F.2d 433, 434 (2d Cir. 1989) (insured versus insured exclusion included claims "which are brought by, or on behalf of, any other Insureds including but not limited to shareholders' derivative suits and/or representative class action suits, brought by one or more, past, present or future directors and/or Officers including their estates, beneficiaries, heirs, legal representatives, assigns and/or the Company against one or more past, present or future Directors or Officers"). Indeed, the Gemini Policy contains examples of other exclusions for liability arising out of acts or omissions by an insured or those acting on its behalf. For example, the Gemini Policy excludes coverage for

> Any loss, cost or expense arising out of any claim or "suit" **by or on behalf of a governmental authority** for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of "pollutants".

(ECF No. 71-14 at 8.) The policy has also excluded coverage for:

**g. Employer's Liability**
"Bodily injury" to:
**(1)** An "employee" of the insured arising out of and in the course of:

13

> **(a)** Employment by the insured; or
> **(b)** Performing duties related to the conduct of the insured's business; or
> **(2)** *The spouse, child, parent, brother or sister of that "employee"; or any other person; as a*
> *consequence of Paragraph (1) above.*
> This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
> This exclusion does not apply to liability assumed by the insured under an "insured contract".
> Except for "bodily injury" sustained by an "employee" of the insured arising out of and in the
> course of employment as a master or member of the crew of any vessel, this exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying Insurance" unless otherwise directed by this insurance.

(ECF No. 71-13 at 7 (emphasis added).) Gemini chose not to include the italicized language in the Named Insured versus Named Insured Exclusion and, as a matter of law, this Court cannot write in a more favorable exclusion for Gemini. *Simonetti*, 859 A.2d at 698 (holding "the court must enforce the contract as it is written; the court cannot make a better contract for parties than the one that they themselves agreed to")[4]

Lastly, Gemini argues the claims brought by Dana Pancoast as Administratrix of the Estate "are the equivalent of a claim brought by [Brian] Pancoast, because, under New Jersey Law, the Estate stands in the shoes of the decedent." (ECF No. 71-1 at 17.) Specifically, it argues:

> under New Jersey law, the claim and damages asserted by Dana Pancoast do not exist independent of the Estate's Wrongful Death claims for the bodily injuries and death of [Brian] Pancoast. Dana

---

[4] Even assuming, at best, the Exclusion was ambiguous, it must be resolved against Gemini. *DiOrio*, 398 A.2d at 1280. Because even if the language of the policy supports two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage must be applied. *Corcoran v. Hartford Fire Ins. Co.*, 333 A.2d 293, 298 (N.J. Super. Ct. App. Div. 1975).

> Pancoast asserts claims under tow New Jersey Statutes – the Wrongful Death Act (N.J.S.A. 2A:31-1 *et seq.*) and the Survivorship Statute (N.J.S.A. 2A:15-3 *et seq.*) Claims brought under both statutes are derivative of the Estate's claim, and is dependent on and incidental to the personal injury claim asserted on behalf of [Brain] Pancoast. Therefore, all of the claims raised on the Underlying Pancoast Lawsuit are the functional equivalent of a claim brought directly by [Brian] Pancoast.

(*Id.* at 17-18.)

Even if Gemini's equivalent and derivative argument is true, it is irrelevant because the Exclusion unambiguously requires a claim to be asserted by a listed Named Insured on the Gemini Policy or one of its employees. The Gemini Policy's focus is on who is bringing the matter, not on what underlying claim is being brought. As such, the Court finds the Estate's Underlying Suit is not excluded by the Named Insured versus Named Insured Exclusion. Gemini relies mainly on three cases too support its argument that the Estate's and Dana Pancoast's claims are barred by the Exclusion as derivative to Brian Pancoast's claims. The Court finds Gemini's reliance on these cases misplaced.

First, Gemini's reliance on *Gabriele v. Lyndhurst Residential Community, L.L.C.*, 43 A.3d 1169 (N.J. Super. Ct. App. Div. 2012), for the proposition that the Estate and Dana Pancoast's Wrongful Death claims are barred by the Named Insured verses Named Insured Exclusion, is misplaced, as the policy in *Gabriele* is dissimilar to the one before the Court. In *Gabriele*, Lyndhurst entered into a contract with Bravante Automatic Sprinkler to perform sprinkler work. *Id.* at 1170. The contract required Bravante to name Lyndhurst and Daibes, construction manager for the project, as additional insureds under the policy. *Id.* Gabriele was employed by Bravante as the foreman for the sprinkler work performed for Lyndhurst. *Id.* During his employment, he fell of the sixth floor of the building and died. *Id.* Josephine Gabriele, as administratrix of his estate and administratrix prosequendum, brought a survivorship and wrongful death action against

15

Lyndhurst, Daibes, and various other contractors on the job site. *Id.* Therefore, Lyndhurst and Daibes sought coverage from Hanover as additional insured under the Bravante policy, but Hanover disclaimed coverage pursuant to two exclusions in the policy, only one relevant to this matter. *Id.* The relevant exclusion stated:

> It is agreed that this insurance does not apply to "Bodily injury," "Property Damage" or "Personal Injury" to:
>
> **(1)** An "employee" of any Insured or to any "person" or "organization"
>
> (a) resulting from discrimination based on, but not limited to, race, color, creed, sex, religion, age, national origin, handicap, political or sexual preference, whether or not for alleged violation of any federal, state or local governmental law or regulation prohibiting such discrimination;
>
> (b) arising out of, caused by, or related to the employment practices of any insured including, but not limited to, hiring, negligent hiring or hiring practices, negligent training, or negligent supervision, termination, layoff, disciplinary procedures, promotion and failure to promote;
>
> (c) resulting from sexual harassment by any insured or by any other "employee" of any insured;
>
> (d) arising out of or in the course of, or as a consequence of, employment by any insured;
>
> (e) arising out of or in the course of, or as a consequence of, association with any insured . . . .

*Id.* at 1171.

Hanover relied upon subsection (d) of the above exclusion to deny coverage for Gabriele's wrongful death and survivorship claims. *Id.* The court agreed with Hanover and relied on the "arising out of" language in finding that bodily injury "arising out of" Gabriele's employment was not covered. However, the policy in *Gabriele* is different than the one before this Court. The exclusion in *Gabriele* included only the "arising out of" language that is also present in the Named

16

Insured versus named Insured Exclusion in this matter but did not include the second condition included in the Named Insured versus Named Insured Exclusion – the "claimed by" language, which is the language at issue in this matter and the language that warrants coverage in the Underlying Lawsuit.

In *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142, 1144 (M.D. Fla. 2005), the underlying lawsuit involved an employee seeking damages from his employer for an injury he sustained in a car accident owned by his employer. The employer's insurance policy contained a cross-liability exclusion, which disclaimed "coverage for claims or suits brought by one insured against another insured covered under the Policy." *Id.* at 1144. Insured under the policy was defined as "any other person who is an approved driver identified on the Scheduled Driver Endorsement for any business use of a covered auto." *Id.* The employer argued the cross-liability exclusion did not apply because the employee did not allege in his underlying complaint that he was engaged in the business use of a covered auto. *Id.* The court ultimately found that the employee was an approved driver and that he was engaged in the business use of a covered auto at the time of the accident. *Id.* at 1150. Therefore, the court concluded that "[s]ince [the insurance company] has established that [the employee] was an insured under the Policy, the Rivera's complaint in the state court involves *one insured under the Policy (Alberto Rivera) bringing claims against another insured under the Policy*" barring coverage. *Id.* (emphasis added). Unlike in *Underwriters*, the complaint in the Underlying Lawsuit does not involve an insured under the Gemini Policy against another insured. Instead, the Underlying Lawsuit involves the Estate of an employee and his widow. As such, this case is irrelevant to the Court's analysis.

Lastly, in *United National Insurance Company v. International Petroleum and Exploration*, No. 04-00631, 2007 WL 4561460, at *1 (D. Utah Dec. 20, 2007), United National

Insurance Company ("UNIC") brought a declaratory judgment lawsuit to determine whether it was required to indemnify International Petroleum and Exploration ("IPE") for what IPE paid in relation to an industrial accident where several workers were killed or injured and resulting tort lawsuits. IPE and two other companies, Aspect and Noble owned interest in several wells, and Noble acted as the operator of the wells. *Id.* Noble, as the operator of the wells, was required to obtain and maintain commercial general liability insurance. *Id.*

On January 13, 2003, a non-party T & L Environmental Services, Inc. ("T & L"), was hired by Noble to dispose of waste material collected in the Wells. *Id.* at 2. During the unloading of the waste, an explosion and resulting fire occurred resulting in several deaths and injuries. *Id.* None of the individuals injured or dead were employees of Noble, Aspect or IPE. *Id.* After the accident, two lawsuits for wrongful death and personal injury were filed against Noble and others. *Id.* Noble ultimately settled the lawsuits for approximately $10.8 million and invoiced IPE for its share of the settlement, which equaled approximately $1.4 million. *Id.* At the time of the accident, IPE was incurred by UNIC and sought coverage from UNIC to cover its settlement portion. *Id.* at 3. UNIC denied coverage, arguing IPE's claim was barred by the Co-Owner Exclusion: "B. The following exclusions are added to COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages): This insurance does not apply to: . . . b. Damages claimed by any 'co-owner of the working interest[.]'" *Id.* at 13. IPE did not dispute that Noble was a co-owner of the wells, but argued "that the exclusion d[id] not apply . . . because it paid the approximately $1.4 million because of damages claimed by or on behalf of the victims who suffered bodily injury and death as a result of the Accident, not because of bodily injury or property damages claimed by Noble." *Id.*

The court determined that the "[d]amages claimed by any co-owner of the working interest

referred to in the endorsement plainly means damages claimed by a co-owner for bodily injury or property damage suffered by that co-owner." *Id.* Because the damages in the underlying lawsuit were not claimed by Noble on its own behalf but were claimed by or on behalf of the victims and none of the individuals who were injured or died were Noble employees, the exclusion did not apply. *Id.* The Court finds, contrary to Gemini's argument, that this case supports Defendants' argument that the "claimed by" language should be construed narrowly to only include those listed in the exclusion. Because the victims in *United National Insurance Company* were not employees of Noble, they were not co-owners. The same is true here. Here, the Underlying Lawsuit was brought by the Estate and Dana Pancoast, neither a Named Insureds or employees of a Named Insured, as required by the Named Insured versus Named Insured Exclusion in the Gemini Policy.

As such, the Court finds the Named Insured versus Named Insured Exclusion applies only if liability, cost, or expense of any Named Insured for bodily injury is claimed by a Named Insured listed in the Gemini Policy or by an employee of any of the Named Insureds. Therefore, the Exclusion does not apply to claims brought by the Estate or Dana Pancoast. Accordingly, Defendants' motions for Judgment on the Pleadings are **GRANTED**. Gemini's Motion for Summary Judgment is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motions for Judgment on the Pleadings (ECF Nos. 61-62) are **GRANTED**. Gemini's Motion for Summary Judgment is **DENIED** (ECF No. 71).

Date: January 22, 2019  */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**